Good morning. If it pleases the court, Mark Lipton for the appellant, Katherine Costanza. Having gone through many social security hearings where we have the experts testify by phone, I'm used to talking to the air and then hearing a response back. So, Judge Gibson, thank you for being here with us and taking the time to listen to my case. I'd like to reserve two minutes for rebuttal, Your Honor. This is a social security disability appeal. I'm sure the court's very familiar with the facts and have reviewed it all. We have, indeed. I would like to just point out on a policy basis the issue here, of course, is a remand versus a reversal. When we have remands, we double everybody's time. We double the time of the administrative law judges, the appeals counsel, and the claimants. And while abuse of discretion under Harmon is the standard you're to use today, I certainly believe that the policy of having to have cases done twice when they don't have to be done twice for the inconvenience not only of the administration but certainly the burden it puts on the claimants should be considered. The standard of review, as Harmon enunciates, is that the case should be reversed rather than remanded. If the ALJ has failed to provide legally sufficient reasons for rejecting the evidence, there are no outstanding issues to be resolved. And it's clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. I think that in this case, Ms. Costanza meets all those criteria. I think she illustrated that there were legal errors committed by the ALJ. The administrative law judge failed to credit her credibility properly. And the witness she presented, the district court agreed with that. The ALJ did not apply the proper rules to the treating physicians. The district court agreed with that as well. Were those things done properly? Were her testimony and the opinions of the treating physicians credited like they should have been? We have a lady who is limited to working maybe a couple of days a week. She testified that she has four bad days a week because of fibromyalgia where she rests most of the day. We have a medical examiner who testified that he didn't know whether she had fibromyalgia or not, but if she did, her symptomology that she complained of would be consistent with the illness. Most compelling in this case, Your Honors, is not only the opinion of Dr. Levitz, the treating physician, but the treatment he gave her since April of 1992. And his records are in the transcript. Trigger point injections of cortisone every other month, year after year after year. This isn't a case where he sent her just the biofeedback or prescribed Elevil, which is a typical treatment for fibromyalgia, and told her to do a little bit of aerobic exercise. This is a situation where he's doing probably the most invasive treatment you can do for fibromyalgia. So he took it quite seriously, and she went to him year after year after year. The issues that the commissioner raises as unresolved issues are the onset date and the need for possible vocational testimony. As to the onset date, the record does not have to be unequivocal. In fact, I believe that Social Security ruling 8320 even indicates that precise evidence need not be available. Inferences are even permissible. Well, in this case, we have a lady that started with surgery in June of 1991 for her neck, went on to bilateral carpal tunnel surgery for her hands, and then only after those did not resolve with her symptomology did the fibromyalgia diagnosis attach, and treatment began for that. Again, Social Security ruling 83-20 indicates that to determine the onset, you start with the applicant's allegations, and the ruling actually says this is found on the disability. September 30, 1996 is the key date here? September 30, 1996 is the date last insured, Your Honors. All right. So back in June 1991 was the last date she actually worked, and again the Social Security ruling indicates that as far as the applicant's allegations, you start with the application, and the alleged onset date of application is June 1991. Then you look at work history, and you do that by looking at the earnings report, which is also in the record, which ends in that third quarter of 1991. And then you look at the medical and other evidence. Well, since June 1991, this applicant, this claimant, has had one procedure after another trying to treat chronic symptomology, and she has had the treatment not only of surgeries, and they post her date last insured, she had multiple gastrointestinal surgeries, bowel resections, and she started with those actually prior to her date last insured. But the fibromyalgia, which was first picked up and diagnosed in 1992, was treated since April of 92 with trigger point injections. Her testimony is credited. If the opinions of Dr. Levitz and Dr. Restifo and Dr. Kauffman that if she had fibromyalgia, these would be the symptoms which she complained of, which are significant fatigue, joint pain, needing to rest multiple days a week, are credited. There are no outstanding issues. Kauffman thinks that she didn't have fibromyalgia? He said he didn't know. My cross-examination of him ended with, then sitting here today, Dr. Kauffman, you don't have an opinion one way or the other whether this lady has fibromyalgia, and he said, right. So he said, but if she had it, her symptoms would be appropriate. He says that's what they say. Dr. Kauffman is not very partial to the diagnosis of fibromyalgia. Well, the vapors, right? The vapors. I've been with him on several hearings, and I understand it, and I understand this Court's dilemma with fibromyalgia, chronic fatigue, reflex sympathetic dystrophy, when we don't have a lot of objective evidence. But, again, you look at the whole record with this lady, this is not somebody who just waltzes into a doctor one day. So I think the record speaks for itself. I do not believe the vocational testimony is necessary because the rulings make it clear she can't do sedentary work at all. That's the lowest level, because that requires five days a week, eight hours a day. Is there an issue of from what time she is entitled to compensation? I don't believe the onset date is an issue. She stopped working June 1991. That's when she had her first neck surgery. That's what she put on her application, and the earnings records indicate she never worked past that date. And Dr. Levitz, who was her primary treating physician, indicates since that date, neck surgery, she's been disabled, she's totally disabled, she can't sustain activity, she's in chronic pain, and I think that that is the date. Just to clarify, though, I understood that the key has to be before the 96 date. Now, does it also have to be precise as to actual onset, or is it enough if it just occurred before 96? For her to be eligible, if it occurred before 1996, she's covered and she gets benefits. The question is how much retroactive benefits she can get. So that has to be determined. It's important for you to take it back to 91 to get the full benefits during the pre-96 period? It is and it isn't, because her application date, I don't believe, that's probably the only fact I don't have is her application date, but they're only going to pay her one year back behind her application, and she didn't file in 92. Okay. So even if you found it. When did she file? I don't know. I don't know, Your Honor. Why don't you save your time for rebuttal and you can tell us that. Thank you. Good morning, Your Honors. My name is Sarah Ryan, and I represent the Social Security Administration. I'm Assistant Regional Counsel here in the San Francisco office, and I would like to add on a personal note that it is a very great privilege and honor to be here appearing before this Court today. Mr. Lipton started out by telling the Court that this is a policy issue and reminding the Court that it was a remand versus reversal issue, and I would like to redirect the Court's attention to the policy involved here. The basic standard of review that this Court has before it is did the district court abuse its discretion? This Court is not engaging in a de novo review of the evidence. This Court simply takes what the district court found and determines whether it's an abuse of discretion under Harmon versus Apfel and other cases that the Court is familiar with. The policy ---- That's different from the usual situation where we're reviewing de novo because this is a remand versus determination. Yes, sir. It's because the question that the appeal brought by the claimant was not attacking the determination of the district court to remand the case. That would have been a de novo review. The appeal was brought attacking the remedy fashioned in that remand, whether it should have been to order the commissioner to make immediate payment of benefits versus conduct additional proceedings in order to cure defects that we ourselves admitted had occurred at the administrative hearing level. And that is the policy that I ask the Court to keep in mind, the very doctrine of separation of powers. We understand, I think, the role here. I think the abuse of discretion issue, at least as I understand it, would be that, and is at least being argued by the claimant here, is that if you accept and properly credit the testimony and evidence that was improperly addressed by the ALJ,  and what's left? If, in fact, you credit the testimony that she can't work four days out of a week, what's left to argue about here factually? I believe appellant is asking this Court to credit as true evidence that the district court chose not to credit as true. But under our law, don't we credit as a matter of law the unrefuted or the improperly rejected testimony? No, sir. Most of the cases in which treating physician opinions have been rejected by the ALJ or in which the claimant's credibility has been rejected by the ALJ are indeed remanded for further proceedings rather than remanded for immediate payment of benefits. In fact, Judge Reinhart himself has made such rulings, the bulk of the cases dealing with the credits. Why Judge Reinhart himself? Well, because shall we call him the father of the rule? Judge Reinhart in Nguyen remanded for further proceedings in a credit as true case rather than for immediate payment of benefits. And the reason is, of course, as the case law developed, it's not just a question of do we accept as true the physician's evidence or the claimant's evidence, but also we look at what that evidence is and ask does that compel a conclusion of disability? Why doesn't that appear? Well, we have some countervailing facts. Contrary to claimant's claim, it's not clear from the record that she quit working in June of 91 because she testified that she kept working until about June of 92, that she was working even after she had her carpal tunnel surgery. What difference would that make, whether it's 91 or 82? The onset date is important. And, yes, it is important to fix an exact month of onset from the standpoint of if she is determined to be eligible for benefits, then the question is from what date does she get paid the benefits. So it's relevant not just to the date. I believe for more than one year back from the time she filed. One year? I believe it's one year, Your Honor. I'm sorry. That's just fled my mind. That's what a posting counsel said. So it would be. If, for example, she filed in 1994, it wouldn't make much difference whether she quit working in 92 or 91. Well, that issue goes to credibility, and that issue goes to severity of symptoms. If she is alleging one thing but she testifies to another, for example, she kept bowling until 1993, and that's hardly consistent with disability and inability to work from 1991. These are factual questions which should properly be resolved by the adjudicator, which in this case is the administrative law judge. And that's why I believe the district court ordered a remand for further proceedings, because there are a number of questions about the onset date, about. . . Is there any question that she's disabled now? I can't tell you as of to date, but I can tell you that at the time the ALJ wrote his decision, she determined that she, the ALJ determined that Clayman finally became disabled. And the question was, did it occur before or after the date last insured? Right. And so that's the question that has to be resolved on further proceedings. Okay. Judge Gibson, any questions? No questions. Thank you. I do have one more. I'm having a hard time with this, and maybe it's because we don't know the date on which she filed. But if the ALJ said, yeah, she's disabled now, and we're looking back from 1996, one year or two years, it seems to me that makes a big difference, because it seems pretty obvious she's disabled now. And she's not going to get better from all of this. Well, the ALJ said that in 1998, and the critical date is September of 96 when her insurance ran out. Yeah, but you haven't said anything about anything in 96. You talk about bowling up until 1993. What is there to suggest she wasn't disabled before 1996? Actually, there is almost a dearth of any kind of events striking this poor lady between 1994 and 96, and then 96 becomes important because that's when she had her partial colon surgery. And the ALJ determined that she had a temporary period of disability following that in order to have reasonable recuperation, but it was not until a year and a half after that that it became apparent that she was really going to have to have considerable procedures done. Okay. All right. Thank you. Thank you very much, Your Honor. I'll make this brief because I have to. We do meet the harm and abuse of discretion standard, Your Honor. I cited that when I first began speaking. According to the Commissioner, this Court can never order remand or, excuse me, order reversal if a district court has ordered a remand. And that's not the case. You do have authority to reverse a case. The application actually was filed on February 18th, 1997. So as far as her back benefits go, if the Court wanted to take a June 1992 onset, it wouldn't really affect the issue very much. Well, what's that date again? February 18th, 1997. Your Honor, the statement about her testimony and her credibility is very frustrating because, first of all, the district court found that she was credible, contrary to what the Commissioner is arguing. But what the sequence of events are is we had our hearing in 1998, and by that time the Court was well aware what this lady had gone through in 1998. And whether she was confused when she said June of 1992 rather than 1991 or she meant that she wanted her employer to consider her off the rolls really is, if you look at the entire record, her surgeries began in 1991. She had no earnings past 1991. And her application says June 1991. So she gets at the hearing and she says June 1992. To say this creates a big credibility issue is very, very silly. Am I correct then that the back benefits would only be due from providing a response if she's disabled would only be from February 18th of 1996? That's correct, Your Honor. So that's the key issue, is it not, whether she was disabled, of course, before the September date in 1996. But for past benefits, it would be February 18th of 1996. That's correct. And the only other point I want to raise is in response to the allegation that there wasn't much going on as far as pain or problems up until this 1996 and the colon resections. This is the way the administrative law judge handled it. He disregarded the fibromyalgia and he focused on the bowel resections and those items. And I'm here saying her fibromyalgia was so severe that in April of 1992, after the neck surgery didn't relieve her problems, after the bilateral carpal tunnel surgery didn't relieve her problems, her treating physician, Dr. Levitz, began trigger point injections every other month since April of 1992, which also belies the June of 92 stopping work date. It was June of 91 she stopped work. Her earnings record, her application, Dr. Levitz's report, all support June of 1991. If the court found June of 1992, I wouldn't have an issue with it. It's inconsequential. But she's been very consistent, and she had significant treatment starting in 1992 on her fibromyalgia. And that's what this issue is in this case. Do we credit her fibromyalgia or not? And I can't see how we can disregard it, given the opinions of the treating physicians, the lack of any clear and convincing evidence against them, as is required in White, Lester, Reddick, and this whole plethora of cases that we've had. So if I understand correctly, it did seem to me that the ALJ was basing it largely on the fact that he disbelieved that fibromyalgia was a And I guess that's what Dr. Kaufman was saying with the vapors. He doesn't know what it is. He can't put his arms around it. He's not comfortable with it. But if she has it, those symptoms are what they say that people have. Okay. Thank you, Your Honors. Thank you. Cases argued will be submitted. Thank counsel for their argument.
judges: Hug, Gibson, Fisher